IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH
COUNTY

CASE NO.:  2013 CA 012960 DIVISION:  AE

RICHARD and BETHANY COTROMANO, as
the parents and natural guardians of
ELIZABETH GRACE COTROMANO, a minor,

        Plaintiffs,

v-

UNITED TECHNOLOGIES CORPORATION,
Pratt & Whitney Group, A Connecticut
Corporation, and PALM BEACH
AGGREGATES, LLC, a Florida Corporation.

        Defendants.

_____/

## COMPLAINT

Plaintiffs, RICHARD and BETHANY COTROMANO as the parents and natural
guardians of ELIZABETH GRACE COTROMANO, a minor, sue Defendants United
Technologies Corporation, Pratt & Whitney Group, and Palm Beach Aggregates, Inc., a Florida
Corporation, for damages as prayed for specifically below.

## JURISDICTION

1.     This is an action for damages of more than Fifteen Thousand Dollars
($15,000.00).

2.     Plaintiffs RICHARD and BETHANY COTROMANO, the parents and natural
guardians of ELIZABETH GRACE COTROMANO, have resided within a residential area in
Palm Beach County known as the Acreage along 76th Road North, Loxahatchee, since June of

1

2002, and ELIZABETH GRACE COTROMANO since the date of her birth, November 18, 2003.

3.    Defendant, Pratt & Whitney Group, is a division of United Technologies Corporation, a Connecticut corporation that possesses, maintains, and runs an engineering facility in northwest Palm Beach County adjacent to the Corbett Wildlife area.  (Hereinafter "Pratt Whitney").

4.    Palm Beach Aggregates, LLC is a Florida Corporation operating mining and associated interests and owning land in Palm Beach County.  (Hereinafter "Aggregates").  Aggregates owned, and then for some time leased, the land that is currently used as an aquifer impoundment by the South Florida Water Management District - the L8 reservoir.

### GENERAL ALLEGATIONS

### PLAINTIFF'S DIAGNOSIS

5.    Plaintiffs RICHARD and BETHANY COTROMANO, bought the 76TH Road North property in the Acreage in June of 2002, and moved their family directly into the home.

6.    ELIZABETH GRACE COTROMANO lived in that home since her birth in November of 2003.

7.    The Acreage, the areas formerly mined by Palm Beach Aggregates (the L8 Reservoir, now owned by South Florida Water Management District), and Pratt Whitney are all located in one surface water system, or sub-watershed, termed the L8 Basin.

8.    ELIZABETH COTROMANO was a healthy, thriving infant until Mothers Day weekend 2004 when her mother noticed that her eyes were seeming to move involuntarily.  She was referred by her pediatrician to an ophthalmologist for an evaluation the same day.  She was then scheduled for a MRI scan of the brain on 5/27/04.  She was six months old at the time; it

2

took seven attempts to establish an IV in a scalp vein for her MRI. The MRI revealed an inoperable optic nerve glioma located in the optic chiasm.

9.     She underwent extensive chemotherapy treatment in order to have the tumor stabilized, including the need for such strenuous therapies as carboplatin.  She is now legally blind.

10.    The tumor and the required medical measures have caused ELIZABETH GRACE COTROMANO significant past and future damages including economic and non-economic damages. These damages are ongoing in nature.

11.    The tumor was caused by exposure to contamination within the Acreage, particularly to ionizing radiation.

## ACREAGE BRAIN TUMOR CLUSTER

12.    In August 2009, the Florida Department of Health reported a significantly increased incidence of pediatric brain tumors among children living in the Acreage for the years 2004-2007.  The numbers within the report also indicated that the rate of incidence was steadily increasing among the entire population.

13.    The Center for Disease Control (CDC) confirmed that there was a pediatric brain cluster within the Acreage for the years 2004-2007.

14.    When a significantly elevated incidence of pediatric brain tumors was confirmed again in 2008, the DOH incorporated year 2008 into the declared cluster.

15.    ELIZABETH GRACE COTROMANO is one of the tumor victims included in that increased incidence because she is a minor.

3

16. The DOH has declined to ascertain whether the brain tumor incidence among Acreage general population, which had been rising steadily prior to 2007, continued to rise in 2008 and thereafter.

17. The incidence of adult brain tumors occurring in 2008-2010 is in fact significantly increased.

## RADIATION IN THE ACREAGE

18. It is generally accepted by nearly all branches of medicine and particularly by epidemiologists, radio-oncologists, health physicists, and neurologists that exposure to ionizing radiation can cause a brain tumor and will significantly increase an individual's risk for developing a brain tumor.

19. Two types of ionizing radiation including gamma and/or beta emitting radionuclides have been detected throughout the Acreage: naturally occurring and non-naturally occurring. Note "naturally occurring" does not mean naturally present—only that fission is not required to cause the isotope to be in existence.

20. Those radionuclides that have been detected in the Acreage at above natural background rates but may be termed naturally *occurring* include Uranium-234, Uranium-235 Uranium-236, and elevated levels of the decay products of Thorium, particularly Lead-214 and Bismuth-214 and Actinium-228. (Naturally Occurring Radioactive Material or NORM.) The *presence* of technologically enhanced concentrations of NORM products (TE-NORMS) in water systems can be associated with the metal processing industry, particularly airplane engine and turbine manufacturing; however, high concentrations of these radionuclides in an environment are more readily associated with mining operations, including the type of shell rock mining conducted by the Aggregates.

4

21.     In addition to the TE-NORM, radionuclides that have been detected in the Acreage that are not naturally occurring.   These include Cesium-137, Iridium-191, and Cadmium-109.  Contamination of Iridium-191 and Cadmium-109 is particularly associated with the metal processing industry generally and with airplane engine and turbine manufacturing and testing of the type conducted by Pratt Whitney at its Palm Beach Facility.

22.     Both these types of radionuclides (TE-NORM and the industrial, non-naturally occurring material) have been detected in the groundwater and in the surface waters structures moving water through the canals that recharge the surficial aquifer from which the COTROMANO residence sourced their drinking, bathing, and irrigation water.

23.     The aquifer underneath the Acreage moves at a southeast direction away from the western edge of the Pratt Whitney, through the Corbett Wildlife Management Area (Corbett), into the Acreage.

24.     The aquifer underneath the Acreage is recharged by the M Canal, which has been significantly and periodically influenced by the Aggregates rock pits since at least 2003 and perhaps earlier.

25.     In fact, there is little to no distinction between the surface and ground water in the L8 Basin which includes both the Acreage and the Defendants' business operations.

26.     The described carcinogenic contaminants are present within the L8 Basin as a result of the operations of Pratt Whitney and the Palm Beach Aggregates.

## PRATT WHITNEY LIABILITY

27.     Pratt Whitney has used the previously referenced radionuclides in its operations at the Pratt Whitney campus, a campus with numerous canals and sheet-swamps that are adjacent to wetlands in the Corbett Wildlife Management Area (Corbett).

28. Pratt Whitney used either the specific radionuclides or the parent radionuclide of every naturally occurring previously referenced radionuclide in its operations at the Pratt Whitney campus.

29. Pratt Whitney has failed to use and maintain these materials safely and has emitted these materials into the surface and ground waters in Corbett and into the Acreage as part of routine misuse, dumping and neglect.

30. The wetlands in and around Pratt & Whitney drain into the Acreage surface waters at varying rates each year but particularly in the times of extremely heavy rains such as have been documented to occur at least once every decade from the time Pratt Whitney began working with these materials (circa 1958).

31. Pratt Whitney has used some or all of these radionuclides in its operations at test stands located on the western edge of the Pratt Whitney campus, a portion of the campus where the groundwater runs southeast at a velocity and trajectory that would carry and has carried contamination into the Acreage community within twelve to thirty years.

32. In the 1980's, Pratt Whitney reported a portion of the contamination that had built-up over time on its property to the Department of Environmental Regulation.

33. The site should have been, and was at various times slated to be, an EPA Superfund site, which would have included "a record of decision" and clean-up plan that was authored by, executed by, and performed by EPA. A Record of Decision (ROD) is a public document that explains which cleanup alternatives will be used to clean up a Superfund site. The ROD for sites listed on the NPL (NPL Site Listing Process) is created from information generated during an EPA conducted Remedial Investigation/Feasibilty Study (RI/FS).

34.     Instead, Pratt Whitney exercised influence through the state agency, the Department of Environmental Regulation, to avoid the sort of government investigation that should have accompanied the preparation of an agency-authored "Record of Decision."

35.     In order to avoid exposure for the full extent of its clean-up liability and to avoid the disclosure of its use of several hazardous and radioactive products, Pratt Whitney exercised influence on the DER through then DER employee Rick Reis to have the clean-up, and more importantly investigation, performed by Pratt Whitney with limited EPA oversight.

36.     Shortly after securing that its ability to maintain control over the site, Pratt Whitney hired Rick Reis away from DER to ensure that the company would have minimal exposure.

37.     The purpose of these acts was to fraudulently conceal from the government and the public the extent of Pratt Whitney's failure to follow environmental protection law.  In other words, UTC/Pratt Whitney eschewed disclosing the full extent of contamination and liability for proper environmental clean-up in order to protect the company's contracting abilities.

## PALM BEACH AGGREGATES LIABILITY

38.     Palm Beach Aggregates and/or its predecessor in interest, GKK Aggregates, have conducted an aggregate mining business to the west of the Acreage since at least 1993.

39.     The aggregate mined by Palm Beach Aggregates is of particular value because it consists of limestone rock, the density of which is sufficient to meet the criteria for road and highway construction. Until 2008, the mining included a dewatering or dredging process through which Palm Beach Aggregates at various times deposited waters including high-concentrations of Naturally Occurring Radioactive Materials (NORM) into adjacent surface waters.

40.     At times prior to 2003, the dewatering violated permits either because the water emitted was in excess of the volume permitted or the water was deposited into non-permitted recipient water bodies, such as the L8 Canal.

41.     In 2003, Palm Beach Aggregates entered into a Consent Final Judgment with South Florida Water Management District (SFWMD) through which many of the pits Palm Beach Aggregates was in the process of mining or had already mined were condemned to SFWMD for use as a reservoir.

42.     For some time prior to this condemnation, Palm Beach Aggregates had been negotiating with other prospective buyers.  The deal struck with SFWMD was for over two hundred million dollars.

43.     The     first     condemnation     was     of     parcels     00404317000001030, 00404320000001040, which included many of the pits Palm Beach Aggregates had already mined.   In February and August of 2007, Palm Beach Aggregates conveyed parcels 00404329000005010 and 00404320000001010 to the District as well.   These additional conveyances were performed in accordance with the 2003 Consent Judgment.

44.     According to the 2003 Consent Judgment, Palm Beach Aggregates retained a reservation of Occupancy, Possession, and Use which allowed them to continue to excavate or dredge pits.  Palm Beach Aggregates also reclaimed pits for reservoir use, or constructed the reservoir.  The Consent Agreement also required Palm Beach Aggregates to certify the cells for water storage use before turning them over to SFWMD for use as a reservoir.

45.     Pursuant to the Consent Judgment, Palm Beach Aggregates retained control of the pits and specifically provided indemnity for any pollution caused by the pits for some time until

8

the process of handing over the pits was complete, which was not until sometime after May 2009.

46.     Palm Beach Aggregates continued its mining activities at parcels it still owned around the Reservoir including 00404329000005020 and   00404329000003020.

47.     From 2003 until September 2008, Palm Beach Aggregates continued the dewatering/dredging process through which technologically enhanced NORM (TE-NORM) was increased in the designated reservoir pits.

48.     Before 2003, the recognition that Palm Beach Aggregates operations had caused or may have caused and would continue to cause contamination within the waters of the pits and the adjacent canals within the Acreage was known by Palm Beach Aggregates and their consultants.

49.     The discovery of Palm Beach Aggregates' responsibility for contamination of the Acreage has been hindered by inconsistent and inaccurate reporting to state regulatory agencies by Palm Beach Aggregates.

50.     TE-NORM has from time to time at various times escaped the confinement of the pits and has entered adjacent canals flowing into the Acreage, contaminating both surface and subsurface waters within the Acreage and materially contributing to the increased incident of brain cancers in the Acreage.

## CONTAMINATION IN AND AROUND THE COTROMANO PROPERTY

51.     The levels of radionuclides found in the water drawn from the wells of several Acreage brain tumor victims greatly exceed the Maximum Contaminant Level (MCL) for alpha emitters set for drinking water by the Environmental Protection Agency of 15 picocuries per liter

(pci/L.)  The EPA set that standard because ingestion of alpha radiation over time can cause cancer.

52.     The radionuclides found within the Acreage water system include gamma and beta emitters, which do not have to be ingested to cause cancer.  The MCL for beta was 15 pci/L prior to the EPA recalibrating the level to a maximum for beta activity at 4 millirems per year.

53.     The MCL for radium, an alpha producing NORM product, is 5pcil/L.  The level for radium is set lower than for alpha emitters generally because it will degrade into radon, lead-214, and bismuth 214 (beta and low level gamma emitters) within a relatively short period.

54.     In 2013, Plaintiffs' counsel conducted testing of various Acreage wells and surface water canals within the Acreage and detected levels of lead-214 and bismuth 214, which are daughter product of Radium and found within the thorium cycle, at levels ranging from 68.1 ± 25.8 pcu/L to 1088 ± 123 pci/L.

55.     In 2013, Iridium-192 was detected in the one victim's well at 189 ± 22.2 pci/L.  It was detected in the soil where that system back-flushes at .346 ± .047 pci/g.  The half-life of Iridium is 72 days.

56.     In 2013, Iridium-192 was found in water drawn from a canal adjacent to the COTROMANOS' property at the level of .051 ± .016 pci/L.  Additionally, the well water of a fellow 2008 cancer cluster victim was tested in June 2013.  Iridium-192 was detected in that well at the level of 4.12 ± 6.49 pci/L.

57.     Considering that the half-life of Iridium is 72 days, the quantity of Iridium causing the present contamination would of necessity be dramatically higher over a decade ago (when the COTROMANOS acquired their property.)  Alternatively, the COTROMANO property has been subject to multiple lower level gamma radiation contaminations.

58.     In either case, such an exposure greatly increases the risk of developing a brain tumor and was a material and substantial contributing cause of ELIZABETH GRACE COTROMANO's brain tumor.

59.     The industrial radionuclide Cadmium-109 was also detected in the backflush soil of at least one victim's water system.

60.     In addition to the 2013 detection of these industrial radionuclides, the DEP detected Cesium-137 in three of the five soil samples it tested in its 2010 investigation of the COTROMANO home.

61.     The DOH study detected Cesium-137 in the soil of every case home it tested except one.

62.     Cesium-137 has a half-life of 30.17 years and decays into Barium-137, which has a half-life of 153 seconds before becoming stable barium.  Stable barium has been detected in the soil as well.

63.     Cadmium, barium, and lead are neurotoxins which can pass the blood-brain barrier.

## COUNT I
## NEGLIGENCE AGAINST PRATT WHITNEY

64.     Plaintiffs re-allege those matters set forth in paragraphs 1 through 62 above.

65.     Pratt Whitney owed the surrounding community, including ELIZABETH GRACE COTROMANO, the duty to exercise at least reasonable care in its efforts to use radioactive materials in a safe manner commencing with its opening in 1955 continuing at all times thereafter.

11

66.     From 1957 through 2009, and perhaps even until today, Defendant Pratt Whitney has breached that duty by allowing the soils and waters of its operations to become contaminated and to emanate radioactive materials.

67.     As controller and operator of its facilities and as landowner, Pratt Whitney is jointly and severally liable together with any prior or subsequent non-innocent landowner of its properties as well any other tort-feasor for any damages resulting from pollutive acts.

68.     The breaches described above caused ELIZABETH GRACE COTROMANO's damages including but not limited to the economic damages, mental anguish, pain and suffering, loss of enjoyment of life, diminished capacity, disfigurement caused by her affliction of radiation-induced illness, visual impairment and brain tumor.  These damages are ongoing and continuing in nature.

WHEREFORE, Plaintiffs demand judgment for damages, interest, costs of litigation and such other and further relief as the Court may deem appropriate.   Plaintiffs further demand trial by jury.  Plaintiffs reserve the right to assert a claim for punitive damages upon satisfaction of statutory prerequisites.

## COUNT II
## NEGLIGENCE AGAINST PALM BEACH AGGREGATES

69.     Plaintiffs re-allege the facts and matters stated above in paragraphs 1 through 63.

70.     Palm Beach Aggregates owed the surrounding community, including ELIZABETH GRACE COTROMANO, the duty to exercise reasonable care in the operation of its business including its permitted and non-permitted use and/or alteration of hazardous and /or radioactive materials and its operation of the inherently dangerous activity of asphalt and substrate mining.

71.     From at least 1993 through 2003, Defendant Palm Beach Aggregates and/or its predecessor companies has breached that duty by allowing the soils and waters of its operations to become contaminated and to emanate contaminations in the form of radioactive materials into the surface and groundwater of the L8 basin.

72.     Defendant Palm Beach Aggregates has further breached that duty by failing to exercise reasonable care when it lobbied for and then built the reservoir project that would exacerbate the problem.

73.     The breaches described caused ELIZABETH GRACE COTROMANO's damages including but not limited to the economic damages, mental anguish, pain and suffering, loss of enjoyment of life, diminished capacity, disfigurement caused by her affliction of radiation-induced illness, visual impairment and brain tumor.

WHEREFORE, Plaintiffs demand judgment for damages, interest, costs of litigation and such other and further relief as the Court may deem appropriate.   Plaintiffs further demand trial by jury.  Plaintiffs reserve the right to assert a claim for punitive damages upon satisfaction of statutory prerequisites.

## COUNT III
## TRESPASS AGAINST PALM BEACH AGGREGATES AND PRATT WHITNEY

74.     Plaintiffs re-allege those facts and matters set forth in paragraphs 1 through 63 above.

75.     From 2001 through and including at least 2009, Defendants allowed pollution to trespass unto the property and persons of the COTROMANOS as described in the allegations above.

76.     Defendants are strictly and jointly liable for damages resulting from trespass.

13

77.     The trespasses alleged caused the Plaintiffs' damages including but not limited to the economic damages, mental anguish, pain and suffering, loss of enjoyment of life, diminished capacity, disfigurement caused by her affliction of radiation-induced illness, visual impairment and brain tumor. These damages are ongoing and continuing in nature.

WHEREFORE, Plaintiffs demand judgment for damages and further demands trial by jury. Plaintiffs reserve the right to assert a claim for punitive damages upon satisfaction of statutory prerequisites.

## COUNT IV
## CHAPTER 376 LIABILITY AGAINST PALM BEACH AGGREGATES AND PRATT WHITNEY

78.     Plaintiffs re-allege those facts and matters set forth in paragraphs 1 through 63 above.

79.     As alleged above, both Palm Beach Aggregates and Pratt Whitney emitted contaminants into the surface and groundwater in excess of the limits allowed by governing agencies, statutes and, when applicable, their permits.

80.     Pursuant to F.S. §376.313, Pratt Whitney and Palm Beach Aggregates are strictly and jointly liable for any and all damages emanating from the effluences described in paragraphs 1 through 63 above.

81.     The emissions caused ELIZABETH GRACE COTROMANO's damages including but not limited to the economic damages, mental anguish, pain and suffering, loss of enjoyment of life, diminished capacity, disfigurement caused by her affliction of radiation-induced illness, visual impairment and brain tumor. These damages are ongoing and continuing in nature.

14

82.     Pursuant to that Act, Plaintiffs may be awarded costs of litigation (including reasonable attorney's and expert fees) if the court determines such an award is in the public interest.

WHEREFORE, Plaintiffs demand judgment for damages and an award for attorney fees and costs pursuant to F.S. §376.313 and further demand trial by jury.  Plaintiffs reserve the right to assert a claim for punitive damages upon satisfaction of statutory prerequisites.

## COUNT V
## STRICT LIABILITY AGAINST PALM BEACH AGGREGATES AND PRATT WHITNEY

83.     Plaintiffs re-allege those facts and matters set forth in paragraphs 1 through 56 above.

84.     As alleged above, both the Aggregates and Pratt Whitney emitted contaminants into the surface and groundwater during the performance of its industrial activities.

85.     The building and testing of airplane engines and the use of radioactive material is an inherently dangerous activity.

86.     Rock mining is an inherently dangerous activity.

87.     Pratt Whitney and Palm Beach Aggregates are strictly and jointly liable for any and all damages emanating from the failure to safely perform inherently dangerous industrial activity.

88.     Pratt Whitney's and Palm Beach Aggregates' failure to exercise care in and failure to safely conduct these inherently dangerous activities caused the Plaintiffs' damages including but not limited to the economic damages, mental anguish, pain and suffering, loss of enjoyment of life, diminished capacity, disfigurement caused by her affliction of radiation-

induced illness, visual impairment and brain tumor.  These damages are ongoing and continuing in nature.

WHEREFORE, Plaintiffs demand judgment for damages, interest, costs of litigation and such other and further relief as the Court may deem appropriate.   Plaintiffs further demand trial by jury.  Plaintiffs reserve the right to assert a claim for punitive damages upon satisfaction of statutory prerequisites.

DATED this 16th day of August, 2013.

Jack Scarola (jsx@searcylaw.com)
Florida Bar No:  169440
Mara R.P. Hatfield (mrh@searcylaw.com)
Florida Bar No:  037053
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida  33409
Telephone:  (561) 686-6300
Facsimile:  (561) 383-9451

**** CASE NUMBER: 2013CA012960 DIVISION: AE ****

Electronically Filed 08/16/2013 11:56:02 AM ET

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statues section 25.075.

**I.      CASE STYLE**

IN THE CIRCUIT COURT OF <u>FIFTEENTH</u>  THE  JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>Elizabeth Cotromano, Richard Cotromano, Bethany Cotromano</u>
Plaintiff
        vs.
<u>United Technologies Corporation Pratt & Whitney Gr, Palm Beach Aggregates LLC</u>
Defendant

**II.     TYPE OF CASE**

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☒ Negligence – other
    - ☐ Business governance
    - ☐ Business torts
    - ☒ Environmental/Toxic tort
    - ☐ Third party indemnification
    - ☐ Construction defect
    - ☐ Mass tort
    - ☐ Negligent security
    - ☐ Nursing home negligence
    - ☐ Premises liability – commercial
    - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
    - ☐ Commercial foreclosure $0 - $50,000
    - ☐ Commercial foreclosure $50,001 - $249,999
    - ☐ Commercial foreclosure $250,000 or more
    - ☐ Homestead residential foreclosure $0 – 50,000
    - ☐ Homestead residential foreclosure $50,001 - $249,999
    - ☐ Homestead residential foreclosure $250,000 or more
    - ☐ Non-homestead residential foreclosure $0 - $50,000
    - ☐ Non-homestead residential foreclosure $50,001 - $249,999
    - ☐ Non-homestead residential foreclosure $250,00 or more
    - ☐ Other real property actions $0 - $50,000

- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
    - ☐ Malpractice – business
    - ☐ Malpractice – medical
    - ☐ Malpractice – other professional
- ☐ Other
    - ☐ Antitrust/Trade Regulation
    - ☐ Business Transaction
    - ☐ Circuit Civil - Not Applicable
    - ☐ Constitutional challenge-statute or ordinance
    - ☐ Constitutional challenge-proposed amendment
    - ☐ Corporate Trusts
    - ☐ Discrimination-employment or other
    - ☐ Insurance claims
    - ☐ Intellectual property
    - ☐ Libel/Slander
    - ☐ Shareholder derivative action
    - ☐ Securities litigation
    - ☐ Trade secrets
    - ☐ Trust litigation

*** FILED: PALM BEACH COUNTY, FL SHARON BOCK, CLERK ***

III. **REMEDIES SOUGHT** (check all that apply):
- ☒ Monetary;
- ☐ Non-monetary
- ☐ Non-monetary declaratory or injunctive relief;
- ☐ Punitive

IV. **NUMBER OF CAUSES OF ACTION: (   )**
(Specify)

<u>5</u>

V. **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☒ No

VI. **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☐ No
- ☒ Yes – If "yes" list all related cases by name, case number and court:

<u>Featherston vs United Technologies - 2011CA013759 MB AJ</u>

VII. **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Mara R. Hatfield</u>          FL Bar No.: <u>37053</u>
    Attorney or party                         (Bar number, if attorney)

<u>Mara R. Hatfield</u>               <u>08/16/2013</u>
    (Type or print name)                   Date

**** CASE NUMBER: 2013CA012960 DIVISION: AE ****

Electronically Filed 08/16/2013 11:56:02 AM ET

*** FILED: PALM BEACH COUNTY, FL SHARON BOCK, CLERK. ***

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR PALM BEACH COUNTY

CASE NO.:

RICHARD and BETHANY COTROMANO, as parents and natural guardians of ELIZABETH GRACE COTROMANO, a minor,

       Plaintiff,

-vs-

UNITED TECHNOLOGIES CORPORATION, Pratt & Whitney Group, a Connecticut Corporation, and PALM BEACH AGGREGATES, LLC, a Florida Corporation,

       Defendants.

_____/

## S U M M O N S:

THE STATE OF FLORIDA
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant:

**UNITED TECHNOLOGIES CORPORATION**
**c/o CT Corporation System, Registered Agent**
**1200 S. Pine Island Road**
**Plantation, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition on Jack Scarola, Esquire, Plaintiff's attorney, whose address is Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of Court, Circuit Civil Division, 205 N. Dixie Highway, West Palm Beach, FL 33401, either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on     AUG 16 2013          , 2013.



CLERK OF THE CIRCUIT COURT (SEAL)

BY: _____
    Deputy Clerk

Kristin Butler-Wilson

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Florida
33402-4667

**** CASE NUMBER: 2013CA012960 DIVISION: AE ****

Electronically Filed 08/16/2013 11:56:02 AM ET

*** FILED: PALM BEACH COUNTY, FL SHARON BOCK, CLERK. ***

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT OF FLORIDA, IN AND FOR PALM BEACH COUNTY

CASE NO.:

RICHARD and BETHANY COTROMANO,
as the parents and natural guardians of
ELIZABETH GRACE COTROMANO

       Plaintiffs,

-vs-

UNITED TECHNOLOGIES CORPORATION,
Pratt & Whitney Group, A Connecticut
Corporation, and  PALM BEACH
AGGREGATES, LLC, a Florida Corporation,

       Defendants.

_____/

## S U M M O N S:

THE STATE OF FLORIDA
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant:

    **PALM BEACH AGGREGATES, LLC**
    **c/o CFRA, LLC, Registered Agent**
    **100 S. Ashley Drive, Suite 400**
    **Tampa, FL  33602**

Each defendant is required to serve written defenses to the complaint or petition on Jack Scarola, Esquire, Plaintiff's attorney, whose address is Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida  33409, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of Court, Circuit Civil Division, 205 N. Dixie Highway, West Palm Beach, FL 33401, either before service on plaintiff's attorney or immediately thereafter.  If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

               AUG 16 2013
    DATED on _____, 2013.

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Florida
33402-4667

CLERK OF THE CIRCUIT COURT

BY: _____
    Deputy Clerk

    Kristin Butler-Wilson

Electronically Filed 08/16/2013 11:56:02 AM ET

*** FILED: PALM BEACH COUNTY, FL SHARON BOCK, CLERK. ***

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT OF
FLORIDA, IN AND FOR PALM BEACH
COUNTY

CASE NO.:

RICHARD and BETHANY COTROMANO, as
the parents and natural guardians of
ELIZABETH GRACE COTROMANO, a minor,

              Plaintiffs,

v-

UNITED TECHNOLOGIES CORPORATION,
Pratt & Whitney Group, A Connecticut
Corporation, and PALM BEACH
AGGREGATES, LLC, a Florida Corporation.

              Defendants.

_____/

### NOTICE OF RELATED CASE

     Plaintiffs by and through their undersigned counsel, provide Notice of known related
cases as follows: **CASE NO.:   2011CA013759XXXXMBAJ**: JOYCE FEATHERSTON, as
Personal Representative for the ESTATE of JOSEPH MICHAEL BARATTA, Decedent,
Plaintiff, vs. UNITED TECHNOLOGIES CORPORATION, Pratt & Whitney Group, a
Connecticut Corporation, and PALM BEACH AGGREGATES, LLC, a Florida Corporation.

     I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished by
service with the initial Complaint.

                               _____
                           Mara R. P. Hatfield/ Florida Bar No.: 37053
                           Primary E-mail: mrh@searcylaw.com
                           Secondary E-mail(s): dtm@searcylaw.com
                           Searcy Denney Scarola Barnhart & Shipley, P.A.
                           2139 Palm Beach Lakes Boulevard
                           West Palm Beach, Florida 33409
                           Phone: (561) 686-6300 Fax:  (561) 383-9539
                           Attorney for Plaintiffs

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

RICHARD and BETHANY
COTROMANO, as the parents and natural
guardians of ELIZABETH GRACE
COTROMANO, a minor,

       Plaintiffs,

vs.

UNITED TECHNOLOGIES
CORPORATION, Pratt & Whitney Group,
A Connecticut Corporation, and PALM
BEACH AGGREGATES, LLC, a Florida
Corporation,

       Defendants.

Case No. 2013CA012960 AE

_____/

## **DEFENDANT'S MOTION FOR AN EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINT**

Defendant, United Technologies Corporation d/b/a Pratt & Whitney Group, ("UTC"), through its undersigned counsel, files its Motion for an Extension of Time to Respond to the Complaint filed by Plaintiffs, Richard Cotromano and Bethany Cotromano as the parents and natural guardians of Elizabeth Grace Cotromano ("Plaintiffs") and, in support thereof, states:

     1.    UTC was served with Plaintiffs' Complaint on August 21, 2013, therefore, UTC's response to the Complaint is due on or before September 10, 2013.

     2.    UTC is requesting a three (3) week extension of time to respond to the Complaint, making UTC's deadline to respond on October 1, 2013, due to the various related actions filed

simultaneously with the Plaintiffs' Complaint,[1] and competing workload obligations.

3.      This request for an extension of time is not being made for purposes of delay, and will not prejudice Plaintiffs in any way.

4.      UTC has conferred with counsel for Plaintiffs regarding this request for an extension, and counsel for Plaintiffs would only agree to an extension of time on the condition that UTC would not move to dismiss the complaint.  UTC did not agree to Plaintiffs' conditions and was therefore forced to file this motion.

WHEREFORE, Defendant, United Technologies Corporation d/b/a Pratt & Whitney Group, respectfully requests that this Court grant its Motion for an Extension of Time up through October 1, 2013 to Respond to Plaintiffs' Complaint and grant such other relief as the Court deems just and appropriate.

---

[1] On August 20 and 21, 2013, the following related lawsuits were filed by counsel for Plaintiff: *Gregory and Jennifer Dunsford, et al. v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court, Case No.: 2013CA012970 AG; *Jessica Newfield v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court, Case No.: 2013CA012965 AH; *Richard Cotromano, et al. v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court, Case No.: 2013CA012955 AA; and *Kristina Marie DeCarlo v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court, Case No.: 2013CA012962 AF.

Page 2

GUNSTER, YOAKLEY & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.
**Attorneys for Defendant**
**United Technologies Corporation d/b/a Pratt**
**& Whitney Group**
777 South Flagler Drive
Phillips Point, Suite 500 East
West Palm Beach, FL  33401-6194
Telephone:  561-655-1980
Facsimile:  561-655-5677

By:  /s/ Gregor J. Schwinghammer, Jr.
    Gregor J. Schwinghammer, Jr., Esq.
    Florida Bar No.: 090158
    gschwinghammer@gunster.com
    G. Joseph Curley, Esq.
    Florida Bar No.: 571873
    jcurley@gunster.com
    Fabienne E. Fahnestock
    Florida Bar No.: 0145483
    ffahnestock@gunster.com

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-mail this 9th day of September 2013, in accordance with Florida Rule of Judicial Administration 2.516 to: Jack Scarola, Esquire (jsx@searcylaw.com), Mara R.P. Hatfield, Esquire (mrh@searcylaw.com), and (dtm@searcylaw.com), Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409.

    /s/Gregor J. Schwinghammer, Jr.
    Gregor J. Schwinghammer, Jr., Esq.

WPB_ACTIVE 5604685.1

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA

RICHARD and BETHANY COTROMANO as
the parents and natural guardians of
ELIZABETH GRACE COTROMANO, a minor,

          Plaintiffs,

v.

UNITED TECHNOLOGIES CORPORATION,
Pratt & Whitney Group, a Connecticut
Corporation, and PALM BEACH
AGGREGATES, LLC, a Florida Corporation,

          Defendants.

_____/

CASE NO. : 2013CA012960
DIVISION:  AE

### DEFENDANT PALM BEACH AGGREGATES, LLC'S
### MOTION FOR EXTENSION OF TIME TO
### RESPOND TO PLAINTIFFS' COMPLAINT

      Defendant PALM BEACH AGGREGATES, LLC ("PBA") files its Motion for an

Extension of Time to Respond to the Complaint filed by Plaintiffs and in support thereof states:

      1.    PBA was served with Plaintiffs' Complaint on August 21, 2013, and PBA's

response to the Complaint is therefore due on or before September 10, 2013.

      2.    PBA is requesting a three (3) week extension of time to respond to the Complaint,

making PBA's deadline to respond on October 1, 2013, due to the various related actions filed

simultaneously with the Plaintiffs' Complaint,[1] and competing workload obligations.

---

[1] On August 20 and 21, 2013, the following related lawsuits were filed by counsel for Plaintiffs: *Richard and Bethany Cotromano, et al. v. United Technologies Corporation, et, al.*, Palm Beach County Circuit Court, Case No.: 2013CA012960 AE; *Jessica Newfield v. United Technologies Corporation et al.*, Palm Beach County Circuit Court Case No. 2013CA012965 AH; *Richard Cotromano, et al. v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court, Case No.: 2013CA012955 AA; *Kristina Marie DeCarlo v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court; Case No.: 2013CA012962 AF; and *Gregory and Jennifer Dunsford, et al. v. United Technologies Corporation, et al.*, Palm Beach County Circuit Court, Case No.: 2013 CA012970 AG.

3.      This request for an extension of time is not being made for purposes of delay, and will not prejudice Plaintiffs in any way.

4.      PBA has conferred with counsel for Plaintiffs regarding this request, and counsel for Plaintiffs would agree only to an extension of time on the condition that PBA would not move to dismiss the complaint.  PBA does not agree with Plaintiffs' conditions and is therefore forced to file this motion.

WHEREFORE, Defendant Palm Beach Aggregates, LLC, respectfully requests that this Court grant its Motion for an Extension of Time up through October 1, 2013 to respond to Plaintiffs' Complaint and grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

s/ Laura L. Voght_____
LAURA L. VOGHT
Florida Bar No. 558796
3344 Peachtree Road NE, Suite 2400
Atlanta, Georgia  30326
Phone:  404-876-2700
Fax:  404-875-9433
*Counsel for Defendant, Palm Beach Aggregates, LLC*

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic mail on this 9th day of September 2013, to all counsel on the attached Service List.

Respectfully submitted,

**WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC**

s/ Laura L. Voght
LAURA L. VOGHT
Florida Bar No. 558796
3344 Peachtree Road NE, Suite 2400
Atlanta, Georgia 30326
Phone: 404-876-2700
Fax: 404-875-9433
*Counsel for Defendant, Palm Beach Aggregates, LLC*

-3-

## SERVICE LIST

Mr. Jack Scarola
jsx@searcylaw.com
Mara R.P. Hatfield
mrh@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Attorney for Plaintiff

and

Gregor J. Schwinghammer, Jr.
gshwinghammer@gunster.com
Stacey Cole Ibarra
sibarra@gunster.com
Gunster, Yoakley & Stewart, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL  33401
Attorneys for Co-Defendant United
Technologies Corp. and Pratt & Whitney Group